ISAAC SMITH, Plaintiff in Error, *v.* JOHN H. SMITH, Defendant in Error.

ERROR TO BOND.

A wager as to the result of a presidential election, in another State, made after the vote has been cast, is not against public policy.

A stakeholder, unless some other mode has been provided, is the proper person to decide who has won a wager.

ON the 14th day of November, 1856, John H. Smith filed in the clerk's office of the Circuit Court of Bond county, Illinois, an affidavit in replevin, setting forth that he was lawfully entitled to the possession of a certain one-horse buggy, nearly new, etc., worth about ninety-five dollars; that the same was unlawfully detained from his possession by Isaac Smith. On the same day a writ of replevin was issued out of the clerk's office upon said affidavit, and on the same day was served by taking said buggy and delivering same to said plaintiff.

Afterwards, said John H. Smith filed his declaration in replevin for said buggy. To which declaration, Isaac Smith filed three pleas: The plea of *non cepit;* plea of property in defendant; and plea of property in stranger. To which said pleas, said John H. Smith filed replications.

Afterwards, at the June term of said Bond Circuit Court, 1857, the said cause coming on for trial, by consent, was tried by the court, SNYDER, Judge, presiding.

Whereupon plaintiff introduced one *Joel Smith,* who testified that he was in Greenville about three weeks before Christmas,

and that George Moffitt tried to sell a buggy to him; that after-wards, John H. Smith, the plaintiff in this suit, traded for the buggy; that Smith was to pay for the buggy, by note for one hundred and fifty dollars, which he held on A. H. Douglass, and Moffitt was to give Smith a smaller note he held on him, and the buggy for the note on Douglass; that Smith said he could not take the buggy away that day, but would come back and get it in a few days.

Plaintiff then introduced one *Franklin Berry,* who testified, that he saw Isaac Smith bring the buggy to his stable, about one week after the last presidential election; it was an open buggy, brown or black.

Plaintiff next introduced one *Chamberlain,* who testified, that he knew Moffitt's buggy; that he saw Isaac Smith and his son taking it from Elam's shop towards the stable spoken of by Berry; that Elam keeps buggies to sell; and that the buggy had been at Elam's for a considerable length of time; that Moffitt had been working at Elam's shop before that time, but was not working anywhere at that time.

Plaintiff here closed his case.

Whereupon defendant introduced one *J. H. Alexander,* who testified, that about two days after the late presidential election, the said Moffitt offered to bet his buggy against one hundred and ten dollars, that Mr. Fillmore, as a candidate for president of the United States, was not behind the other candidates for that office, in the State of New York; and that Isaac Smith, the de-fendant, took him up and bet one hundred and ten dollars against the said buggy that Mr. Fillmore, as such candidate, was behind the other candidates for that office in the State of New York; that witness was selected as stakeholder for said parties, and Isaac Smith placed the hundred and ten dollars in his hands, and Moffitt told witness that the buggy was at Elam's shop; that he could leave it there or take it when he pleased; and that the stakes were to be given by witness to the winner whenever it was ascertained how the State of New York had gone in the election; that witness did not remove the buggy from Elam's, but let it remain there; that about a week or two afterwards he became satisfied that Isaac Smith had won the said bet, and that he, witness, delivered up the money staked, to said Isaac Smith, and went with him to Elam's shop and gave up the buggy to him; that it was in the same place where Moffitt said it was when the bet was made; that there was nothing expressly said at the time of the bet, as to who was to determine who had won or lost, but witness considered it the same as bets commonly made; and that he had the right to decide, or that it was his duty to decide.

Defendant next introduced one *Seymour*, who was sworn and testified, that he heard a conversation between plaintiff and defendant which had reference to a former conversation which took place between the said Isaac H. Smith and Moffitt previous to the purchase by plaintiff of the buggy. In which the defendant asked the plaintiff, " did you not hear me tell Moffitt that he ought to wait and see whether he owned a buggy before he sold one ?" To which plaintiff replied that he did recollect such a conversation.

Whereupon the court decided for the plaintiff.

Defendant moved for a new trial, which was overruled.

The errors assigned are—

That judgment should have been rendered in favor of defendant.

That judgment should not have been rendered in favor of plaintiff.

That the judgment was against the law and the evidence.

That the court should have granted a new trial.

J. AND D. GILLESPIE, for Plaintiff in Error.

LINCOLN & HERNDON, for Defendant in Error.

CATON, C. J. In the case of *Morgan* v. *Pettit*, 3 Scam. R. 529, it was decided that a bet made between citizens of this State upon the result in another State of a presidential election, then pending, was not forbidden by our statute, and was not void by the common law, as being against public policy. In this case, there is much less objection as controvening public policy, for the bet was not made till several days after the election in New York, and after the vote must have been canvassed, although before the result was known here. Nor did the event which was to determine the wager depend upon any chance, accident, effort or skill. It was a fact irrevocably fixed as is the number of the grains of wheat in a measure standing on the table, or the date of a coin held in the hand. Such a contract the parties had an undoubted right to make, by the common law, and it is not forbidden by our statute.

Independent of the right of the stakeholder to determine who had won the wager here, the party proved, by an official certificate of the canvass of the votes of the State of New York, that the result was in his favor ; but in the absence of such proof, we are inclined to concur with the court in the case of *Elthorn* v. *Kingsman*, 4 Eng. Com. Law, 626 ; at least so far as to hold that the stakeholder is the person selected by the parties themselves, to decide in the first instance the event upon which the

wager depends, unless they have fixed upon some other tribunal to determime that question. By the terms of the contract he was required to deliver the stakes to the party who should win the bet, and surely it was never contemplated that he should be compelled to file a bill of interpleader, to determine that matter, in order to protect himself from a lawsuit, by one party or the other. As between themselves, they might perhaps litigate the matter, without being concluded by the decision of the stakeholder. We are prepared to hold that his decision *prima facie* settles the rights of the parties.

If the verbal declarations by Moffitt 'to John H. Smith, were sufficient to transfer the possession of the property to him, while it was remaining at Elam's shop, by the same rule the possession was transferred by Moffitt to the stakeholder at the time the bet was made, and in the same mode was the possession transferred to Isaac Smith by the stakeholder, at the time he decided who had won the wager, and the buggy was thereupon taken away by him; so that both constructively and actually, the defendant first acquired possession of the buggy. But even were it otherwise, the plaintiff could not maintain this action, for as between Moffitt and Isaac Smith, the title of the latter was complete the moment the wager was decided in his favor; and the proof satisfactorily shows that John H. Smith purchased with full knowledge of the defendant's right to the property.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*